IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DENIS F. AGUADO, | Cause No. CV 23-78-BLG-SPW |
| Petitioner, | |
| vs. | ORDER |
| JIM SALMONSEN, WARDEN MONTANA STATE PRISON, | |
| Respondent. | |

On June 30, 2023, state pro se petitioner Denis F. Aguado ("Aguado") filed an application under 28 U.S.C. § 2254, seeking habeas corpus relief.[1]  Aguado challenges convictions for Sexual Abuse of Children and Sexual Assault handed down following successive jury trials in Montana's Twenty-Second Judicial District, Stillwater County.  *See e.g., State v. Aguado*, 2017 MT 54, 387 Mont. 1, 390 P. 3d 628 (Mont. March 7, 2017).

This Court previously advised Aguado that it is required to prescreen all actions brought by prisoners who seek relief.  28 U.S.C. § 1915(a).  During the

---

[1] *See* (Doc. 1 at 197).  Under the "prison mailbox rule" a court document is deemed filed as of the date the prisoner delivers it to prison officials to be mailed to the Court.  *Houston v. Lack*, 487 U.S. 266, 274 (1988).

prescreening process, it was observed many of Aguado's claims appeared to be unexhausted and/or procedurally defaulted. This Court determined, however, it was necessary to first examine the timeliness of Aguado's federal filing. (*See* Doc. 6 at 3.) Aguado was advised of the requisite statutory provisions. He was informed that if he could not demonstrate a basis to excuse his untimely filing, the petition would be dismissed. (*See generally* Doc. 6.) On October 26, 2023, Aguado filed his response to the Court's order. (Doc. 9.)

### i.    Background

This Court previously analyzed the statute of limitations. It is briefly summarized herein. On March 7, 2017, the Montana Supreme Court affirmed Aguado's convictions. Aguado did not petition for a writ of certiorari, therefore, review on direct appeal was complete when the 90-day period for seeking such review concluded. *See Bowen v. Roe*, 188 F. 3d 1157, 1159 (9th Cir. 1999); *see also* 28 U.S.C. § 2244(d)(1)(A). Thus, Aguado's judgment became final on June 5, 2017.

On May 5, 2018, Aguado filed a petition for postconviction relief ("PCR"). *See e.g., Aguado v. Twenty-Second Jud. Dist.*, OP 18-0583, Ord. at *1 (Mont. Oct. 23, 2018). Between Aguado's judgment becoming final and the filing of his PCR petition, 333 days had elapsed on Aguado's federal filing time clock, but the filing of the PCR petition tolled the federal limitations statute. Thus, at the time of filing

his PCR petition, Aguado had 32 days remaining on his federal filing clock.  The state district court denied Aguado's petition; Aguado timely appealed.  The Montana Supreme Court subsequently affirmed the denial of his postconviction petition. *Aguado v. State*, 2022 MT 146N, Ord. (Mont. July 19, 2022). Accordingly, when Aguado's federal filing clock re-initiated on July 20, 2022, he should have filed in the Court on Monday, August 22, 2022, but he did not file in this Court until June 30, 2023; more than 10 months too late.  (*See* Doc. 6 at 4-5.) Aguado does not dispute this Court's calculation relative to his federal limitations period.

Instead, he seems to argue that he is entitled to equitable tolling due to a combination of the COVID-19 pandemic and ongoing health issues that he experienced.  (*See* Doc. 9.)  In support of his argument, Aguado has supplied medical records from 2021, (Doc. 9-1 at 1-7, 12-35), as well as Montana State Prison records indicating that Aguado has been assigned an infirmary aid and a typing aid. (*Id.* at 8-11)(J. L. indicates he was Agaudo's infirmary aid for the 15 months leading up to October of 2023, while C. M. states he was Agaudo's typing aid for two years leading up to October of 2023); *see also* (Doc. 9 at 9.)

## ii.   Legal Standards

Equitable tolling is available to toll the one-year statute of limitations applicable to 28 U.S.C. § 2254 habeas corpus cases. *Holland v. Florida*, 560 U.S.

631, 645 (2010). Equitable tolling is appropriate when a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649. Both elements must be met. *Id.*; *see also Pace v DiGuglielmo*, 544 U.S. 408, 418 (2005). "The petitioner must show 'that extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.'" *Porter v. Ollison*, 620 F. 3d 952, 959 (9th Cir. 2010)(*quoting Ramirez v. Yates*, 571 F. 3d 993, 997 (9th Cir. 2009)). "[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F. 3d 1063, 1066 (9th Cir. 2002).

"To apply the doctrine in extraordinary circumstances necessarily suggests the doctrine's rarity, and the requirements that extraordinary circumstances stood in [petitioner's] way suggests that an external force must cause the untimeliness, rather than...merely oversight, miscalculation or negligence on the petitioner's part, all of which would preclude the application of equitable tolling." *Waldron-Ramsey v. Pacholke*, 556 F. 3d 1008, 1011 (9th Cir. 2009)(quotation omitted); *accord Miles v. Prunty*, 187 F. 3d 1104, 1107 (9th Cir. 1999)("equitable tolling is unavailable in most cases").

To meet the diligence requirement for equitable tolling, the petitioner must

4

show that "he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F. 3d 582, 598-99 (9th Cir. 2020)(en banc). Diligence is a separate inquiry from the extraordinary circumstance inquiry and "covers those affairs within the litigant's control." *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 256 (2016). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653.

To meet the second causation prong requirement, a petitioner must establish not only the existence of an extraordinary circumstance but also that it was, in fact, the cause of the untimely filing of the federal habeas petition. *See Spitsyn v. Moore*, 345 F. 3d 796, 799 (9th Cir. 2003); *see also Bryant v. Arizona Att. Gen.*, 499 F. 3d 1056, 1061 (9th Cir. 2007)(a petitioner must show that the claimed extraordinary circumstances were the cause of his untimeliness). "[I]t is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy." *Davis*, 953 F. 3d at 600.

As explained herein, even if the Court presumes Aguado acted with reasonable diligence, he cannot show that his medical issues constituted an

extraordinary circumstance which prevented his timely filing.  Accordingly, he is not entitled to equitable tolling.

### iii.   Analysis

Aguado asserts the statute of limitations should be tolled based upon serious medical issues he was experiencing.  Agaudo's health concerns appear to have begun in June of 2021 when it was discovered that he had a clogged coronary artery.  (Doc. 9 at 2.)  On June 25, 2021, Aguado was admitted to St. Patrick's Hospital in Missoula, Montana, for a stent procedure to remedy his blocked artery.  According to Aguado, the procedure was complex and could not be completed as initially planned.  (*Id.*)  On July 22, 2021, Aguado was re-admitted to St. Patrick's for a second stent procedure utilizing a different method.  Four stents were placed, and the procedure was a success.  (*Id.* at 3.)  Agaudo's medical records corroborate the procedure.  Aguado was released from the hospital two days later; he was prescribed four medications and advised not to put any strain or pressure on either side of his groin.  The stents were placed via incisions made in Agaudo's right and left groin.  (*Id.*)

Unfortunately, Aguado suffered a rupture and blood clot in his left groin which required his admission to the emergency room at St. James Hospital in Butte, Montana, on August 1, 2021.  (*Id.* at 4.)  On August 12, 2021, the blood vessel in this groin hemorrhaged and Aguado was transported by another inmate to

6

the prison infirmary.  (*Id.* at 4-5.)  Aguado was then transferred to the emergency

room in the hospital at Deer Lodge, Montana. From there, he was air lifted to the

trauma unit at Benefis Hospital in Great Falls, Montana.  (*Id.* at 5.)  There Aguado

was diagnosed with several serious medical conditions.  (*Id.* at 5-6.)  Aguado

remained at Benefis Hospital until August 25, 2021.  (*Id.* at 6-7.)

On September 17, 2021, Aguado was admitted again to St. Patrick's

Hospital and underwent a surgery to remove the blood clot from his left groin.  (*Id.*

at 7.)  Additional blood clots were discovered, and an additional surgery was

performed.  (*Id.* at 7-8.)  On September 26, 2021, Aguado was released from St.

Patrick's Hospital.  Aguado claims that MSP personnel refused to administer all

the medications prescribed and did not properly care for his wounds.  (*Id.* at 8.)

Aguado states that he spent the next four months in the infirmary.  In January of

2022, Aguado was released back to his cell that is equipped with a medical bed and

he remains under the chronic care of MSP and St. Patrick's Hospital to this day.

(*Id.* at 8.)  Aguado argues these extraordinary circumstances affected his cognitive

abilities and continue to do so and they, in turn, prevented him from timely filing

in this Court.  (*Id.* at 9.)

The Court acknowledges that Aguado experienced serious health issues and

corresponding medical procedures and understands he still has difficulties to date.

The problem is that time-period which Aguado references occurred in 2021 until

7

the beginning of 2022. This corresponds with the time during which Agaudo's

state postconviction petition proceedings and appeal therefrom were pending.  As

previously explained Aguado was entitled to statutory tolling from May 5, 2018,

the date on which he filed his state postconviction petition, to July 19, 2022, the

date on which the Montana Supreme Court denied Aguado's appeal.  (*See* Doc. 6

at 5.)  Additionally, despite the health issues Aguado was experiencing, he was

able to file his opening brief on appeal with the Montana Supreme Court on

December 13, 2021.  He filed his reply brief on May 20, 2022.  *See Aguado v.*

*State*, Cause No. DA 21-0154.[2]  Thus, to the extent that Agaudo's health issues

may have constituted an extraordinary circumstance, they did not prevent him from

filing in state court.  Moreover, he has not shown that his medical conditions made

it impossible to file in this Court on time.  *See Spitsyn*, 345 F. 3d at 799.

Aguado does not provide any basis that would support equitable tolling for

the 333 days that elapsed between the Montana Supreme Court affirming the

denial of his direct appeal and his appeal becoming final in June of 2017 to the

filing of his PCR petition on May 5, 2018.  Similarly, any argument that Aguado

presents that he should be entitled to equitable tolling from July 20, 2022 to August

22, 2022, is undercut by the fact that he was able to file his pro se documents in the

---

[2] The case docket for this matter is available at the Montana Supreme Court's website:
https://supremecourtdocket.mt.gov/PerceptiveJUDDocket/#!toCaseResults (accessed February
14, 2024.)

state courts. Thus, Aguado has not established equitable tolling should apply during any time periods that would excuse his untimely filing in this Court.

Similarly, the Court is not persuaded that COVID-19 restrictions and pandemic delays impacted Agaudo's ability to timely file his federal habeas petition. Aguado does not provide fact-specific circumstances related to the pandemic that hindered his ability to timely file in this Court. He generally sets forth the limitations that applied to all inmates incarcerated at Montana State Prison. (Doc. 9 at 1-2.) But he does not explain the manner in which his law library access was limited and/or the length of the restrictions, his attempts to access the library or obtain research materials, how the lack of access to the library impeded his ability to file his petition, what measures were put in place for obtaining legal materials, and if he attempted to utilize those systems. The Court notes that the pandemic limitations did not prevent Aguado from filing in state court during this same time period. Similarly, other courts have found, without more, general claims of COVID-19 lockdowns and delays do not toll the statue of limitations. *See e.g., Davis v. Madden*, No. 22CV0951-LL-MDD, 2023 WL 2087969, at *12 (S.D. Cal. Feb. 17, 2023), *report and recommendation adopted,* No. 22CV951-LL-DDL, 2023 WL 3818358 (S.D. Cal. June 5, 2023)(collecting cases). In short, Aguado's petition is time-barred without excuse and will be dismissed with prejudice.

### iv.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing Section 2254 Proceedings.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

Aguado has not made a substantial showing that he was deprived of a constitutional right.  Moreover, jurists of reason would not find it debatable that his petition is untimely.  A certificate of appealability is denied.

Based on the foregoing, the Court enters the following:

### ORDER

1.  Agaudo's Petition (Doc. 1) is DISMISSED with prejudice as time barred.

2.  The Clerk of Court is directed to enter a judgment of dismissal.

3.  A certificate of appealability is DENIED.

DATED this 21st day of February, 2024.

Susan P. Watters
United States District Court Judge

11